By the way, I forgot to do this last time and I apologize. I wish counsel were still here. We especially thank pro bono counsel for taking up this job to appear in front of us. We appreciate your efforts. It's a great privilege for this court to have pro for us and we appreciate your doing that. With that, go ahead. Good morning. May it please the court. I'm Jacqueline Boss of Morris & Forster and I represent the appellate, Ahmed Amarir. The issue before the court is whether summary judgment should have been granted in light of the numerous disputes of material fact about the CTF dentists' deliberate indifference to Mr. Amarir's serious medical needs. In this case, we've got a dentist on the hook, not just a receptionist. That's correct. In fact, the evidence concludes that this dentist and Dr. Friedman were deliberately indifferent to Mr. Amarir's serious medical needs. I understand that you know the fact situation, but the inmate and appellant, Mr. Amarir, had a multitude of serious, longstanding dental problems including periodontal disease, abscesses of the gum, bleeding gums, six missing teeth, ten or eleven damaged teeth, abscesses of the gum, and clenching and grinding problems. There's no doubt he had a lot of serious dental problems. The difficulty I'm having with your case is I'm having a hard time finding any deliberate indifference again because this are all the problems. Maybe not successfully, maybe not to the liking of your client, but there was a continuous process of this dentist attempting to cope with this messy situation you described. How is that deliberate indifference? What about the treatment manifests deliberate indifference? Actually, the dentist only gave him routine treatment and only for some of his ailments. I don't know what you mean by routine, strike routine. They gave him flossing instructions and they told him to quit clenching and told him to brush better. They gave him two fillings and then ground down those fillings later when the fillings were giving him problems, but they did not treat his... All the times they gave him things to chew on, to... Well, the dentist that succeeded the dentist who's a defendant gave him the mouthguards. So Dr. Hill never gave him any mouthguards. They never treated his periodontal disease. They never treated his bleeding gums. They never treated the fact that he had six missing teeth. And all of these problems led to him later on developing TMJ dysfunction, which again the dentist who treated Mr. Amria after the defendant diagnosed in August 2004. How do you deal with the option that was given to him of consulting an outside specialist on his own dime? Well, yeah, that was... His own $2,000. That's right. I mean, that in itself demonstrates deliberate indifference. It demonstrates that the dentists were aware that Mr. Amria needed treatment by offsite specialists and that they were aware that treatment existed. They were even aware of how much it cost, the $2,000, yet they imposed this condition that was prohibitive to any inmate, let alone Mr. Amria who's indigent. And I think it also... Just a minute. When we say Mr. Amria who's indigent, what evidence do we have in this record that the defendant ever stated that he was indigent? It seemed to me we don't have any evidence that he was indigent. And I don't find any constitutional right to outside treatment. And I don't find any constitutional right to treatment for conditions that are not amenable to treatment. And so therefore I have a tough time wondering how we could get there. Well, in respect to the issue of the condition not being amenable to treatment, that you're talking about the TMJ, which was not diagnosed until two months after the appeal had been finalized. And the TMJ was never raised in any of the TMJ... In any of the administrative appeal documents. It was never once raised as a reason. And he was not even diagnosed until the subsequent dentist started to treat him. And as for a constitutional right to seek treatment, he is suffering from a serious medical need that is not being treated by the CTF dentists. You know, all of these other ailments that they are not treating needs to be treated by off-site specialists. And that brings... Are we supposed to take judicial notice of the prisoner's financial condition? No. There... I think this raises a dispute of fact as to whether Dr. Hill would have known that any inmate who had been incarcerated for as long as Mr. Amaria had been incarcerated would not be able to raise... President of MRAN? He... I think that the default consideration by a... by someone who is as familiar with Dr. Hill would be, would be that $2,000 is a hard amount for an inmate to come up with. And it raises a dispute of material fact as to whether or not he knew this. Amaria didn't suggest in any of his appeals that he was unable to afford the outside treatment. He simply stated, and I quote, staff's demands that I pay costs is contrary to their obligation to provide adequate care, particularly for a condition their own treatment exacerbated. He didn't say I can't afford it. He said I don't have to pay for it. They have to do it. He's a pro se litigant and he's, you know, he's... That's what he said. I mean, we're stuck with a record. But there's still a material dispute of fact as to whether Mr... Dr. Hill actually knew or not of the indigence. And also, there's actually quite a lot of law saying that you are not allowed to delay or deny medical treatment for non-medical reasons. And in this case, they're denying it because he did not have $2,000 in his trust account. And the Ninth Circuit has said this in Jones v. Johnson, and amongst other cases. Well, I get prisoner trust accounts all the time. Some are substantial. Some show an average deposit of zero during the last six months. But don't we have to have something in the record? There is something in the record showing that he only has average deposits of $133. And that came up later on when he was seeking... Leave to appeal? Yes. No, no. He was seeking informa treatment or what? Informa pauperis status? No. He submitted documents, I think, for his... to get counsel at the district court level. So the district court saw this evidence. I would change the subject just a little bit. You also want to collect from Dr. Friedman. Yes. Now, as I understand it, there is no respondeat superior liability under Section 1983. And so therefore, I guess I'm having a tough time finding how I can get him under 1983. Well, Dr. Friedman was cc'd on the... Well, firstly, he... The second level dispute document was signed in Dr. Friedman's name by Dr. Dalian. Well, no. Hold on a second. Did Dr. Friedman sign it? It has his name under the signature. But did he sign it? No, but he... There's a dispute of factors to whether or not he's aware of documents that are signed in his name. And also, he was cc'd on the final appeal letter decision dated June 9, 2004. And the entry there shows it was sent to the health care manager's CTF, which is one of Dr. Friedman's titles. That also raises an issue as to whether he saw that the appeal had occurred and saw that the second level appeal document had been signed in his name. And he did not disavow that document at any time. I guess my next question is a little bit worrisome to me, is that if I compare this particular case to Hunt v. The Dental Department case, which is really the Ninth Circuit case controlling in this area, in my mind, and I think about Hunt's breaking teeth, bleeding, infected gums, inability to eat properly, didn't get the medical attention that he suggested he needed, and I compare this and all of the medical attention this appellant received, I'm trying to find the deliberate indifference. I think there's analogies here. The dentists here, Mr. Amaria also had bleeding gums and teeth that were becoming damaged as a result of not being treated. And Mr. Amaria's gums have been left bloody for seven years. He's never been offered treatment for the conditions that have damaged 11 of his teeth and led to his TMJ. And as in Hunt, Mr. Amaria has raised a material issue of fact that goes to whether the dentists did not treat a number of his medical issues. And as the court did in Hunt, this court should reverse the district court's ruling and remand the case. What about qualified immunity? Let's focus qualified immunity, for example, on your claim that somehow he should have been referred to an outside specialist. How is that, why is that not covered by qualified immunity? How would a reasonable person in the dentist's situation at that time have known that the Constitution somehow required more than what he did with respect to an outside specialist? Well, he has a clear right to not have, to not be suffering from, or not have dentists be deliberately indifferent to his serious medical needs. That right is established, it's established in Pharma, it's established in Hydric, v. Hunter, by the Ninth Circuit. And the dentist would then be on notice of that right, and they would not be qualifiably immune if they acted to offend that. So the fact that they were not treating his condition and they could not treat the condition within the CTF meant that he then had a right to seek off-site medical treatment. Well, is that clearly established, that's that we're going to make him pay for, pay if you can't take care of it in the prison setting, the Constitution demands that you send him to an outside specialist. Has that been established anywhere, such that a dentist would have known that at the time? Well, I mean, it's, firstly, I mean, Section 3350, subsection 2A of the Department of Corrections Regulations states that off-site medical treatment can be granted for serious Can be granted, but we're talking about the Constitution now. And then the constitutional right is clearly established in Pharma in itself that No, that's a level, the level of generality fails here. It's got to be specific enough so that a reasonable dentist would understand that the Constitution somehow mandated outside treatment. Well, in Hunt, the plaintiff, the inmate did not get treatment for his bleeding gums and his, you know, teeth that were being damaged by not being treated. So that in itself would provide the specificity that's needed. Doesn't this put you back in the same circle? That is, the argument essentially that denial of outside treatment is a reflection of denial of in-house treatment and that, therefore, his inability to meet the condition would constitute the, would satisfy the qualified immunity issue. But then, aren't you back to the same point  about the inability to pay? Well, when you say that it's the same argument, I mean, this Court has found in Hamilton before that a finding of deliberate indifference necessarily precludes a finding of qualified immunity. But also the, I mean, I think we're debating the material dispute of fact that did the dentist, wouldn't the dentist have known that any inmate could not have, well, the default consideration by the dentist would have been that $2,000 is a lot of money for someone out of jail, let alone someone who is an inmate. Thank you very much. Your time has expired. Good morning. May it please the Court, my name is Catherine Wheeler. I represent the Appellees, Drs. Hill and Friedman. Your Honors, this is not a case about a constitutional violation. The facts in this case show that it's about a mere disagreement of dental treatment. I will first address qualified immunity, and then I will address the deliberate indifference standard under the Eighth Amendment. As a preliminary matter, Dr. Friedman is not liable at all in this case. As the record shows, he did not participate in the CDC 602 appeal, and he did not participate at all in the treatment of Mr. Amerer. Further, Mr. Amerer himself in his complaint alleged negligent supervision and training of Dr. Hill. As you know, there is no vicarious liability in a 1983 action. Thus, Dr. Friedman cannot be held liable. Well, if there were, if in fact you were dealing with inadequate supervision, that would be direct liability, but you're saying that there's no adequate record of that. Well, no, and Dr. Friedman actually wouldn't be the one to supervise Dr. Hill in this case anyway. And when you look at Dr. Friedman's declaration, the record shows that Dr. Sather is actually the chief dental officer in charge of supervising all of the dentists. Dr. Hill is shielded from liability in this case under the doctrine of qualified immunity. You see that even if there is a constitutional violation, a reasonable dentist in Dr. Hill's position would not have known that his actions with regard to the treatment of Mr. Amerer or his decisions regarding the CDC 602 appeal would have resulted in a constitutional violation. Suppose he had known about the inability to meet the $2,000 tariff that would be applied for outside treatment. Well, had he known about, had he known Mr. Amerer's financial condition, it still would not change the analysis. Dr. Hill would have been justified had he outright denied Mr. Amerer's treatment. Mr. Amerer was receiving ongoing medical treatment for his grinding and clenching, which is what his CDC 602 appeal was regarding, which is also what his complaint is regarding. So Dr. Hill evaluated Mr. Amerer, evaluated his appeal, and made a determination based on his professional judgment and California state law regarding whether or not his condition was readily amenable to treatment. That's on the TMJ. What about the other? Well, I think that you see from the record at page 1 and the excerpts of record at page, I believe it's 9 and 10, that Mr. Amerer's complaint is based on his statement that Dr. Hill inadequately treated his grinding, clenching, and jaw pain. Those are all symptomatic of TMJ, which is what Dr. O'Neill, after evaluating Mr. Amerer on the second level of the appeal process, told, evaluated his condition and determined that further treatment was necessary, which Mr. Amerer agreed to, and then Mr. Amerer was given a night guard, which alleviated some of his pain. So we see that even though TMJ wasn't necessarily written on the appeal as the basis for the initial review by Dr. Hill, that this was indeed the condition that was complained of and denied. He was just, Dr. Hill in his partial grant was saying, you can seek off-site treatment if you so choose. However, the treatment we're providing you is adequate. So I don't think his ability or inability to pay, whether Dr. Hill knew that, would be dispositive. So to go back briefly to the qualified immunity, Dr. Hill treated Mr. Amerer's grinding and clenching. He treated him 10 times in two and a half years, nine times within 13 months. He testified that he attempted to alleviate Mr. Amerer's dental conditions to the best of his ability. Mr. Amerer also, the record shows at 61 and 62, that Mr. Amerer acknowledges that Dr. Hill attempted to alleviate his conditions, merely that Mr. Amerer was dissatisfied with the result. When Dr. Hill realized that Mr. Amerer was dissatisfied with his dental treatment, Dr. Hill referred his dental care to Dr. O'Neill, who then took it over. This is not a case where a reasonable person in Dr. Hill's position would have thought anything he was doing with regard to any of the actions Dr. Hill took that constituted any sort of constitutional violation. And we see from a state of Ford that even when a prison official knows all of the facts, he can be deemed reasonable, even if he is mistaken with regard to the risk of further harm. Dr. Hill was not deliberately indifferent in this case. He, first, there is no indication in the record that Dr. Hill had any, played any part of making the dental appointments. There is nothing in the record that puts any delay that Mr. Amerer experienced, put that responsibility on Dr. Hill. Further, as in Hallett, there is no causal connection between Mr. or Dr. Hill's actions and Mr. Amerer's dental problems. Mr. Amerer suffered, came to CTF Soledad in 2000 with numerous dental conditions, including generalized gingivitis, moderate gum disease, missing teeth, et cetera. However, Dr. Hill did his best to treat those conditions and acted within his professional wherewithal, knowledge, and treatment. Four dentists, or four doctors, excuse me, reviewed Dr. Hill's treatment of Mr. Amerer. Dr. Sather and Dialon both reviewed it in the CDC 602 appeal. Dr. O'Neill reviewed it subsequently both within the CDC 602 appeal and the, and as his subsequently treating dentist. And Dr. Grimaldi evaluated his case and found no disagreement with the way Mr. Amerer had been treated. Doctors Hill and Friedman cannot be held liable in this case, because they were not deliberately indifferent to Mr. Amerer, or alternatively, because qualified immunity applies to shield them in this case. If your honors have no further questions. Thank you, counsel. Thank you. Thank you both. Case 0616195 is now submitted.
judges: Trott, Smith, Shadur